UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RICKEY GERARD CANNON,

              Plaintiff,

v.                                   Case No. 8:06-cv-741-T-24TBM

SHERIFF JIM COATS, and
DETECTIVE JACOB R. VIANO,
in their individual and official capacities,

              Defendants.

_____/

## ORDER

This cause is before the Court on Plaintiff Rickey Gerard Cannon's April 21, 2006 42 U.S.C. § 1983 complaint alleging that Pinellas County Sheriff Jim Coats and Pinellas County Detective Jacob R. Viano violated Cannon's Fourth Amendment rights by using excessive and unwarranted force to effect Cannon's arrest during a drug sting on December 8, 2004. Cannon seeks compensatory and punitive damages and injunctive relief.

A review of the record demonstrates that Defendants are entitled to summary judgment as a matter of law.

## PROCEDURAL BACKGROUND

On July 28, 2006, Cannon filed a motion for default with supporting exhibits. The Court ordered Defendants to respond, which they did. Based on the response, the Court denied the motion for default. On August 1, 2006, Defendants filed their answer to the

complaint.   On that same date, the Court ordered Defendants to file their motion for summary judgment on or before August 10, 2006, and ordered Plaintiff to file his response to the motion for summary judgment on or before September 9, 2006.   The Court had previously instructed Plaintiff in the requirements for Rule 56.   That order was mailed to Plaintiff and was not returned as undeliverable.

Defendants filed their motion for summary judgment on August 4, 2006. (Doc. No. 18).   Plaintiff did not file a response to the motion for summary judgment.   Instead, on October 10, 2006, he filed a motion to stay proceedings, claiming that he was presently "in transit" status within the Federal Bureau of Prisons as all of his belongings had been "packed out for transit" to the United States Federal District Court in Tampa for an evidentiary hearing.   (Doc. No. 20).   Although the motion is dated August 14, 2006, and Cannon claims to have filed the document on August 16, 2006, the envelope that contained the motion was postmarked October 6, 2006.   As a result, the motion for stay of proceedings was not filed until October 10, 2006.

The Court takes judicial notice of the fact that Plaintiff was away from Coleman FCI for a federal hearing from August 15, 2006 until October 3, 2006.   Although he has presumably had access to the law library and his legal materials since he was returned to Coleman Correctional Institution on October 3, 2006, Plaintiff has not filed a response to the motion for summary judgment.   However, because Plaintiff attached exhibits in support of his claims in the motion for default, and because his original complaint was sworn, the Court will consider these two documents and the exhibits as Plaintiff's response to Defendants' motion for summary judgment.

2

## STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The evidence is viewed in the light most favorable to the opposing party. Miller v. King, 384 F.3d 1248, 1258-1259 (11th Cir. 2004); Barfield v. Brierton, 883 F.2d 923, 933-934 (11th Cir. 1989).

This Court does not decide issues of material fact, but determines whether such issues exist to be tried. Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-movant. Id. at 248. Applicable substantive law will identify those facts that are material. Id.

## APPLICABLE SUBSTANTIVE LAW

A cause of action is created against a person who, under color of law, denies another person of his or her rights, privileges, or immunities protected by the Constitution or other federal statute. 42 U.S.C. § 1983 (2000). It is well-settled that the use of excessive and unwarranted force in effecting an arrest violates a person's Fourth Amendment right to be free from unreasonable seizures. Durruthy v. Pastor, 351 F.3d 1080, 1093 (11th Cir. 2003). However, the Supreme Court has recognized that "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Id. at 396 (citing Terry v. Ohio, 392 U.S. 1, 22-27 (1968)).

In order to prevail on a § 1983 claim, alleging that law enforcement officials used excessive force during the course of an arrest, the plaintiff must demonstrate that the officer's conduct was objectively unreasonable in light of the totality of the circumstances confronting the officer. Graham v. Connor, 490 U.S. 386, 397 (1989). In applying this "objective reasonableness" standard, the court looks at the facts and circumstances of each case from the perspective of a reasonable officer at the time of the arrest, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396.

In filing a § 1983 claim, a plaintiff can sue governmental officers in both their official and individual capacities. A § 1983 claim filed against a government official in his official capacity is actually considered a claim against the governmental entity of which he is an agent. Graham, 473 U.S. at 165; Vineyard v. County of Murray, Ga., 990 F.2d 1207, 1210 n. 3 (11th Cir. 1993). The Eleventh Circuit has held that a governmental entity is only liable to a § 1983 claimant for the actions of its agents when the constitutional violation resulted from: 1) a municipal custom; or 2) a municipal policy. Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1479 (11th Cir. 1991); see also Graham, 473 U.S. at 166. To prove liability based on custom, a plaintiff must establish a widespread practice that "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a custom or usage with the force of law.'" City of St. Louis v. Praprotnick, 485 U.S. 112, 127 (1988) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 167-168 (1970)). Alternatively, to prove liability based on policy, a plaintiff must demonstrate that the unconstitutional deprivation was the result of a decision rendered by

4

a government official who possessed "final policymaking authority." Id. at 1480. While a plaintiff may be able to recover compensatory damages in an official capacity claim, punitive damages are strictly prohibited. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 259-260 (1981).

If, on the other hand,  a § 1983 claimant sues a government official in his individual capacity, that official may be entitled to qualified immunity, thereby shielding him from liability. See Brown, 923 F.2d at 1478. To claim qualified immunity, a government official must first demonstrate that he "was performing a discretionary function" at the time the wrongful act occurred. Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995). The Eleventh Circuit has held that an official acts within his discretionary authority when the acts were: 1) conducted within the scope of his authority; and 2) undertaken pursuant to the performance of his duties. Lenz v. Winburn, 51 F.3d 1540, 1545 (11th Cir. 1995). If the defendant satisfies this burden, the plaintiff is then required to prove that the defendant's conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

In sum, Cannon must prove that Defendants violated his constitutional rights under the Fourth Amendment by engaging in excessive force to effect his arrest. In order to do so, Cannon must demonstrate that Viano's conduct was objectively unreasonable in light of the facts and circumstances confronting him. Even if Cannon meets this burden, he still must establish liability against Defendants under either their official or individual capacities. To hold the Pinellas County Sheriff's Office liable by suing Viano and Coats in their official capacities, Cannon must show that a custom or policy, created by a Sheriff's Office official

5

with final policymaking authority, was the cause of the alleged constitutional violation.  As

for the individual-capacity claims, if Defendants can show that their conduct was within the

scope of their discretionary authority, then Cannon must prove that Defendants conduct

violated a clearly established statutory or constitutional right, of which a reasonable person

would have known.  If Cannon is unable to meet this burden, then Defendants would be

entitled to qualified immunity and not subject to liability.

<u>**PLAINTIFF'S ALLEGATIONS IN THE COMPLAINT AND MOTION FOR DEFAULT**</u>

Cannon contends that Viano used excessive force while arresting him during a drug

sting conducted by the Pinellas County Sheriff's Office on December 8, 2004.  On that day,

Cannon alleges that he was sitting in the passenger seat of a vehicle in a parking lot when

a friend of Cannon's informed him via cell phone that police were approaching the vehicle.

Cannon claims that he became aware of his probable arrest when the undercover

detective, who had been sitting next to him, left the vehicle and ran.  At that moment, a van

pulled in front of Cannon's vehicle, and Cannon proceeded to open the passenger door

slowly and to step out of the vehicle with his hands raised over his head, indicating his wish

to surrender.

According to Cannon, Defendant Viano emerged from the van and approached

Cannon, who was unarmed.  Viano had his gun in one hand and a flashlight in his other

hand.  Cannon claims that Viano hit him across the forehead with the flashlight causing a

deep gash and causing Cannon to fall to the ground face first.  Cannon further asserts that

while he was lying on the ground,  a large amount of blood pooled where his face lay and

he may have been unconscious for a short period of time.  Eventually, a woman officer,

who was present among the approximately thirty officers involved in the sting operation, placed a band-aid on Cannon's forehead.

Shortly thereafter, the officers took Cannon to the police station where they questioned him for approximately thirty minutes.  Cannon alleges that during this time, he continued to tell the officers that he did not feel well, and informed them that he was still bleeding.  In response, a Pinellas County Deputy transported Cannon to the hospital and told the medical personnel that Cannon had been struck in the head with a flashlight.  A doctor examined Cannon and found a two-centimeter semi-curved laceration on the right side of Cannon's forehead.  The doctor sutured the laceration and told Cannon to ice the injury and take Tylenol for any pain.  The officers then transported Cannon to the Pinellas County Jail.

Cannon alleges that as a direct result of Viano's excessive and unwarranted use of force, he has a permanent horseshoe-shaped scar and a protruding lump on his forehead. Cannon further asserts that he suffers from massive headaches and takes Indomethacin for pain.

### DEFENDANTS' ALLEGATIONS IN THE MOTION FOR SUMMARY JUDGMENT

On December 8, 2004, the Pinellas County Sheriff's Office conducted a drug sting operation at 5295 34th Street South in St. Petersburg, Florida.  Viano, along with a number of other law enforcement officials, was a member of the team that arrested Cannon.

At the time of the arrest, Viano exited his vehicle wearing a vest that had the word "Sheriff" clearly displayed.  Viano claims he saw "Cannon exit the passenger side of his vehicle and try to run in a northerly direction away from law enforcement officers."  (Doc. No. 19, ¶ 6).  As Viano neared Cannon, Viano asserts that he further identified himself as

"police" and directed Cannon to stop.  Once he reached Cannon, Viano attempted to use his body to block Cannon's escape.  However, Cannon attempted to evade Viano "by bending his upper body toward [Viano's] right hip and tried to squeeze between the passenger side door and [Viano]."  (Doc. No. 19, ¶ 10).

 As Cannon attempted this evasive maneuver, Viano contends that Cannon hit the shield Viano was holding in his left hand.  According to Viano, after Cannon made contact with the shield, Cannon's head struck Viano's firearm and flashlight, which Viano was holding behind the shield near his right hip.  When Cannon fell, he sustained a moon-shaped cut on his upper right forehead.  Cannon was taken into custody and treated on-scene.

Soon thereafter, an officer transported Cannon to the hospital for treatment and medical clearance. (See Exhibit to Doc. 12). The medical report following the incident indicated that Cannon had a head wound requiring sutures, but that there was no reported loss of consciousness or evidence of a fracture to his skull.  (See Medical Report filed by Cannon as an exhibit to his motion for default, Doc. No. 12).  After Cannon was treated, he was discharged to police custody with instructions to ice his injury, take Tylenol for pain, and have the sutures removed in seven days.  (Doc. No. 12).

## **DISCUSSION**

I. *Claims Against Sheriff Jim Coats in his Individual Capacity*

Cannon has not alleged any facts against Coats in his individual capacity.  Clearly, Cannon is attempting to hold him accountable under the concept of respondeat superior. Respondeat superior, however, is not actionable in 42 U.S.C. §1983 claims.  The Eleventh Circuit has stated that:

> Like municipalities, supervisors cannot be held liable for the acts of employees solely on the basis of <u>respondeat</u> <u>superior</u>. <u>McLaughlin v. City of LaGrange</u>, 662 F.2d 1385, 1388 (11th Cir. 1981), <u>cert</u>. <u>denied</u>, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Supervisory liability is not limited, however, to those incidents in which the supervisor personally participates in the deprivation. <u>Goodson v. City of Atlanta</u>, 763 F.2d 1381, 1389 (11th Cir. 1985); <u>Wilson v. Attaway</u>, 757 F.2d 1227, 1241 (11th Cir. 1985); <u>Sims v. Adams</u>, 537 F.2d 829, 831 (5th Cir. 1976). There must be a causal connection between the actions of the supervisory official and the alleged deprivation. <u>Wilson</u>, 757 F.2d at 1241; <u>Henzel v. Gerstein</u>, 608 F.2d 654, 658 (5th Cir. 1979). This causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need for improved training or supervision, and the official fails to take corrective action. <u>Wilson</u>, 757 F.2d at 1241; <u>Sims</u>, 537 F.2d at 832.

<u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436, 1443 (11th Cir.1985). Cannon has not met this standard and Coats is entitled to summary judgment as to the § 1983 claims against him in his individual capacity.

II. *Claims Against Sheriff Coats in his Official Capacity*

Cannon's suit against Sheriff Coats in his official capacity is really a suit against the state. <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58 (1989). Moreover, as a matter of law, punitive damages are not recoverable in an official capacity § 1983 claim. <u>City of Newport, et al. v. Fact Concerts, Inc., et al.</u>, 453 U.S. 247 (1981).

Plaintiff Cannon has failed to show a custom, policy, practice or procedure that was the cause of the alleged constitutional violation. <u>Monnell v. Dep't of Social Services</u>, 436 U.S. 658, 694 (1978). Because he has failed to establish a direct causal connection between a custom or policy and the alleged constitutional deprivation, and presented no evidence in his Complaint to support his claim which would demonstrate a constitutional violation, Defendant Coats is entitled to summary judgment as to the § 1983 claims against him in his official capacity.

III.  *Claims Against Defendant Viano in his Official Capacity*

Like his claim against Sheriff Coats, Cannon's lawsuit against Defendant Viano in his official capacity is really a suit against the state. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

Cannon has failed to show a custom, policy, practice or procedure that was the cause of the alleged constitutional violation. Monnell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). Because he has failed to establish a direct causal connection between a custom or policy and the alleged constitutional deprivation, and presented no evidence in his Complaint to support his claim which would demonstrate a constitutional violation, Defendant Viano is entitled to summary judgment as to the § 1983 claims against him in his official capacity.

IV.  *Claims Against Defendant Viano in his Individual Capacity*

Cannon cannot show that Viano's' conduct was unreasonable in light of the facts and circumstances that confronted Viano when he attempted to arrest Cannon. Furthermore, Viano is entitled to qualified immunity because he was acting within his discretionary authority when he arrested Plaintiff Cannon and he acted reasonably. Defendant Viano used reasonable force to apprehend Cannon, who attempted to flee the scene and resist arrest during a drug sting operation.  Viano's conduct did not violate any clearly established statutory or constitutional right about which a reasonable person would have known. Vinyard v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002).  Defendant Viano is entitled to summary judgment as to the § 1983 claims against him in his individual capacity.

V.  *Claims Related to Racial Discrimination*

Cannon's complaint is devoid of any facts that support his claim of racial discrimination.  Assuming Cannon's intent was to set forth a claim of selective enforcement of law based on race, Cannon must produce some evidence indicating that individuals of a different race could have been arrested for the same crime, but were not.  Swint v. City of Wadley, Ala., 51 F.3d 988, 1000 (11th Cir. 1995).

However, Cannon has failed to state any facts in his complaint alleging race discrimination; he merely includes the claim as part of the relief he requests.  The only facts alleged in Cannon's complaint relate to Viano's alleged use of excessive force during the arrest.  Nothing in the complaint would lead a reasonable trier of fact to conclude that a genuine issue of material fact exists as to whether Defendants discriminated against Cannon based on his race.

The record, taken as a whole, could not lead a rational trier of fact to find for Cannon, the non-moving party, and there are no genuine issues of material fact for trial.

Accordingly, the Court orders:

1.  That Plaintiff Cannon's motion to stay the proceedings (Doc. No. 20) is **DENIED.**

2.  That Defendants Coats and Viano's motion for summary judgment (Doc. No. 18) is **GRANTED.**  The Clerk is directed to enter judgment for Coats and Viano and to close this case.

ORDERED at Tampa, Florida, on November 16, 2006.

*Susan C. Bucklew*

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record
Rickey Gerard Cannon